United States District Court
Southern District of Texas
**ENTERED**
January 24, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL B., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-03484 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Summary Judgment in Support of Her Social Security Appeal.[1]  ECF 12.  For the reasons stated below, the Court RECOMMENDS Plaintiff's Motion be DENIED and the Commissioner's decision be AFFIRMED.

### I.    Factual and Procedural Background.

On her alleged date of onset of May 4, 2020, Plaintiff Carol B. was fifty years old and possessed a high school education.  Tr. 28.  She applied for Disability Insurance Benefits on February 21, 2020.  Tr. 147.  In her applications, she alleged disability due to a major depressive order, diabetes mellitus type 2, hypertension, post-traumatic stress disorder, neuropathy, retinopathy, rheumatoid arthritis, and left

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 4.

arm problems.    Tr. 460.    Those applications were denied initially and upon reconsideration. Tr. 175–86, 190–97.  Plaintiff then requested a hearing whereupon an Administrative Law Judge ("ALJ") denied benefits on October 21, 2021.  Tr. 144–58.  Plaintiff requested a review of the ALJ's decision, and the Appeals Council remanded the case.  Tr. 164–69.  In the remand, the Appeals Council directed the ALJ to:

> Give further consideration to the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c and 416.920c … Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations … If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

Tr. 167.  After remand and a second hearing in November 2022, a different ALJ issued a written decision on January 30, 2023, denying Plaintiff's claim. Tr. 11–29. Plaintiff again asked for administrative review of the ALJ's decision, but the Appeals Council denied review.  Tr. 1–6.  Thus, the January 30, 2023, decision became the final decision of the Commissioner.  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

### A. Testimony from the August 2021 Disability Hearing.

In her first hearing, Plaintiff testified her past work includes work as a nurse assistant and a receptionist at the VA.  Tr. 44.  In 2013, Plaintiff suffered an on-the-job injury, and she changed positions from nurse to receptionist.  *Id*.  Plaintiff

stopped work as a receptionist on May 4, 2020. *Id.* She testified that she was in constant pain, felt unsteady on her feet, and needed her husband to help her get around. Tr. 45–47. Plaintiff also stated that due to numbness in her left hand she had difficulty holding objects. Tr. 49. Additionally, Plaintiff described constant pain in her arms. Tr. 46. Plaintiff further testified that she struggles with anxiety and depression, and that she takes medication for both. Tr. 47.

### B. Testimony from the November 2022 Disability Hearing.

At the second hearing, Plaintiff stated that she was still in constant pain, struggles to sleep, and was limited when performing household chores. Tr. 65. Plaintiff stated she was unable to stand for more than twenty minutes without pain and that she used a roll away walker. Tr. 66. She also testified that she was unable to lift everyday items, such as grocery bags, due to lower back and arm pain. *Id*. Plaintiff testified she was unable to reach for things with her left arm because her left elbow "locks" and it takes some time to "unlock" it. Tr. 66–67. She further stated that she still struggles with anxiety and depression and has difficulty socializing with other people. Tr. 68. As of the hearing date, Plaintiff was taking Tylenol 3 and Percocet on a daily basis to manage her pain but felt that these medications did not alleviate her pain but only "took the edge off." Tr. 67.

### C. Vocational Expert Testimony.

In the November 2022 hearing, a Vocational Expert testified in response to a hypothetical question that, based on a residual functional capacity ("RFC") for light work with the additional limitations imposed by the ALJ, Plaintiff could perform a job as a marker, weigher, and bagger.  Tr. 72.[2]  In response to a hypothetical question from Plaintiff's counsel, the Vocational Expert testified that a person who could only stand for one hour, move only for thirty minutes at a time, and lift only ten pounds, would be able to perform only sedentary, not light work.  Tr. 73.

### D. Medical Records.

The medical records span 2019-2022 and include records from: State Consultive Examiners Drs. Spoor, Chang, and Kang (Tr. 108–141), Dr. Faiyaz Bhojani (Tr. 945–953), Dr. Yuri Sless (Tr. 1019–1073), Dr. Carla Acra (Tr. 1199–1207), Dr. B. Christopher Meyer (Tr. 1224–1245), and Dr. Madiha Ghayas (Tr. 1434–1475).

## II.    Standard of Review for the Commissioner's Decision.

Section 405(g) of the Act governs the standard of review in social security disability cases.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  Federal court review of the Commissioner's final decision to deny Social Security benefits

---

[2] The hypothetical posed to the Vocational Expert in the August 2021 hearing differs from the November 2022 hearing.  The hypothetical from the November 2022 hearing reflects the limitations found in the ALJ's January 30, 2023, RFC determination.  Tr. 71.

4

is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[3] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The standard of review for social security disability claims is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). A court will not re-weigh the evidence, and in the event of evidentiary conflict or uncertainty, will not substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (internal quotation

---

[3] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

5

marks and citation omitted). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*

When determining whether a claimant is disabled, the ALJ must follow a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton*, 209 F.3d at 453. If the claimant meets her burden, the burden shifts to the Commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy,

and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

## III.  Analysis.

The ALJ performed the standard five-step sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Social Security Act between her onset date of May 4, 2020, and the date of the January 30, 2023, decision.  The Court reviews each step of the ALJ's analysis below.

### A. Step One.

At step one, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  Here, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025, and had not engaged in substantial gainful activity since her alleged onset date of May 4, 2020. Tr. 16–17.  Plaintiff does not allege error at step one.

### B. Step Two.

At the second step, the ALJ determines whether the claimant has a severe impairment.  Social Security regulations provide that "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."  20 C.F.R. § 404.1520c.  The

Fifth Circuit has clarified that "[t]hough the precise wording differs," Social Security Ruling 85-28 comports with its holding in *Stone v. Heckler*, 752 F.3d 1099, 1101 (5th Cir. 1985). *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Thus, an ALJ does not commit legal error by citing SSR 85-28 instead of *Stone* and remand is not required unless "there is no indication the ALJ applied the correct standard." *Id.* Further, if an ALJ proceeds past step two, any failure to apply *Stone* is harmless if it is inconceivable that the result would have been different absent the failure. *Id.*

Here, the ALJ found Plaintiff has the following severe impairments: post-traumatic arthropathy of the left elbow, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, sacroiliitis, obesity, major depressive disorder, generalized anxiety disorder, and bipolar disorder. Tr. 17. The ALJ found that Plaintiff's diabetes mellitus, hypertension, hyperlipidemia, gastroesophageal reflux disease, asthma, obstructive sleep apnea, and right elbow epicondylitis to be non-severe. *Id.* Plaintiff does not allege error at step two.

### C. Step Three.

The third step requires the ALJ to determine whether the claimant's severe impairments meet or medically equals one of the listings in the regulations known as Appendix 1. 20 C.F.R. §§ 404.1520(aa)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, app. 1. "For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only

some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  For a claimant to show that an impairment "medically equals" a listed impairment the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

In this case, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in Appendix 1. Tr. 18–20.  The ALJ found that Plaintiff did not meet the following listings: 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.18 (abnormality of a major joint in any extremity), and 12.04 (depressive, bipolar and related disorders).  *Id.*  In considering whether Plaintiff's impairments equaled any of the listings in severity, the ALJ considered the Paragraph B criteria and determined that Plaintiff exhibited only moderate limitations in her ability to understand or apply information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 19–20.  The ALJ also found Plaintiff did not meet the "paragraph C" criteria of Listings 12.04 and 12.0, stating that Plaintiff:

> does not have a medically documented history of a disorder for at least two years' duration that has caused evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing that diminished the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment, that is, that claimant

has minimal capacity to adapt to changes in their environment or to demands that are not already part of their daily life.

Tr. 20.  Plaintiff does not allege error at step three.

### D. Step Four.

In step four, the ALJ must decide whether the claimant can still perform her past relevant work by determining the claimant's RFC.  "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).  The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ is solely responsible for determining the claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

The ALJ found that Plaintiff had the RFC to perform light work.  Tr. 20. Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

10

20 C.F.R. § 404.1567(b).  "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."  Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).  The ALJ included the following limitations in Plaintiff's RFC:

> she can frequently reach overhead with the bilateral upper extremities; she can frequently reach in all other directions with the left upper extremity; she can never climb ladders, ropes, or scaffolds; she can occasionally kneel, crouch, and crawl; she cannot operate a motor vehicle as an occupational requirement, nor work safely around extraordinary hazards, such as unprotected heights or dangerous machinery (having exposed moving parts or requiring agility in order to evade); she requires a setting that is goal oriented versus requiring that a specified pace be maintained consistently throughout a workday; and she can tolerate occasional interaction with the public.

Tr. 20.  Plaintiff alleges that at step four the ALJ committed three separate errors in violation of *Ripley*, 67 F.3d 552.

The holding in *Ripley v. Chater* stands for the proposition that "an ALJ may not rely on his own unsupported opinion as to the limitations presented by [claimant's] medical conditions."  *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557).  First, Plaintiff argues the mental limitations in her RFC are unsupported by a medical opinion and the record does not clearly establish the effect of Plaintiff's mental impairments on her ability to work. Second, Plaintiff argues the physical limitations in the RFC are not supported by a medical opinion and the record does not clearly establish the effect her impairments

have on her ability to walk or stand.  Third, Plaintiff argues the ALJ did not include manipulative limitations in the RFC and the medical opinions and record do not support that Plaintiff has no manipulative limitations.

### 1. An ALJ commits a *Ripley* error only if substantial evidence does not support the RFC.

Citing *Ripley*, Plaintiff contends the ALJ erred by formulating the RFC without the assistance of a medical opinion.  ECF 12 at 14.  A medical opinion, or medical source statement, is one that is:

> submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.

Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P (S.S.A. July 2, 1996).  When determining a claimant's RFC, ALJs should examine the medical evidence in the record, including testimony of physicians and the claimant's medical records.  *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023).  An ALJ may not rely on her own unsupported opinion to formulate a claimant's RFC.  *Williams*, 355 F. App'x at 831.  Still, the "absence of medical opinions describing the types of work that the applicant is still able of performing … does not make the record incomplete."  *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam) (citing *Ripley*, 67 F.3d at 557).  This much Plaintiff acknowledges.

*Ripley* does not stand for the proposition that an ALJ must always obtain a medical opinion, or that an ALJ cannot formulate an RFC without one. *West v. Kijakazi*, No. H-21-2395, 2022 WL 4137297, at \*7 (S.D. Tex. Aug. 26, 2022); *Young v. Saul*, No. 4:19-CV-00374, 2020 WL 4584388, at \*4 (S.D. Tex. Aug. 10, 2020); *David W. G. v. O'Malley*, No. 4:23-CV-3462, 2024 WL 5284884, at \*7 (S.D. Tex. Dec. 3, 2024). Rather, the ALJ must assess a claimant's RFC based on all relevant record evidence. 20 C.F.R. § 404.1545(a)(3). Medical opinions are just one of several categories of evidence the ALJ considers in formulating a claimant's RFC. *Wills*, 2023 WL 4015174, at \*3. When reviewing the ALJ's RFC determination, courts focus on whether, despite the lack of medical opinion evidence, the ALJ's decision is supported by substantial evidence in the existing record. *Id.*; *See also Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (although "the ALJ neither adopted the state agency report verbatim nor accepted the testimony of [a medical provider], it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards").

In sum, Plaintiff's arguments that the ALJ committed *Ripley* errors because the RFC is not based on a medical opinion, are not well-founded. Instead, the issue the Court must address is whether the RFC is supported by substantial evidence.

## 2. The ALJ's RFC determination is supported by substantial evidence.

"[T]he relative weight to be given [to the] evidence is within the ALJ's discretion." *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citation omitted). In formulating a claimant's RFC, "ALJs can draw their own conclusions based on accurate medical information." *West*, 2022 WL 4137297, at *7 (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)). When substantial evidence supports the ALJ's decision, courts must affirm. *Perez*, 415 F.3d at 461. Here, the ALJ's RFC determination is supported by substantial evidence.

### a. Plaintiff's mental RFC is supported by substantial evidence.

The ALJ found that the record supports a mental RFC that requires "a setting that is goal oriented versus requiring that a specific pace be maintained consistently throughout a workday and [Plaintiff] can tolerate occasional interaction with the public." Tr. 23. When making the mental RFC determination, the ALJ rejected the State agency psychological consultant's February 2021 medical opinion that Plaintiff had no medically mental determinable impairment. Tr. 132. The ALJ rejected this opinion as unpersuasive because the Plaintiff established psychiatric care in February 2022. Tr. 26.

Even without a medical opinion, substantial evidence supports the mental RFC determined by the ALJ. Dr. Ghayas's psychiatric treatment notes, which the

ALJ considered, showed improvements over time as a result of psychiatric treatment. Tr. 23. The record demonstrates that in March 2022, Plaintiff showed improved mood with medication and gave positive feedback regarding the treatment with Klonopin and Caplyta. *Id.* (citing Tr. 1442, 1471). The ALJ also determined that Dr. Ghayas found Plaintiff demonstrated cooperative behavior, normal speech, goal directed thought processes, and functional memory, attention, and concentration. *Id.* (citing Tr. 1437, 1444, 1449, 1451, 1456, 1458, 1472–73). The ALJ acknowledged Plaintiff's reported verbal altercations with family and a stranger between August 2022 and September 2022, but noted that her examinations did not demonstrate assaultive or uncooperative behavior. Tr. 24. The ALJ noted that Plaintiff's medication regiment was adjusted to address these increased symptoms, and that Plaintiff did not require inpatient admission for medication stabilization. Tr. 23 (citing Tr. 1475).

The ALJ relied on the record evidence, including psychiatric treatment notes and records, to formulate Plaintiff's mental RFC and did not err in doing so. *See David W. G.*, 2024 WL 5284884, at *7 (finding no error where ALJ relied on "office visit notes" and medical records to formulate the claimant's mental RFC). As was the case in *David W. G.*, the record here is "replete with medical documents describing Plaintiff's conditions, treatment, and recovery." *Id.* (citing *Wills*, 2023 WL 4015174, at *3).

Plaintiff argues the ALJ mischaracterizes Dr. Ghayas' findings, citing to other instances where Plaintiff's anxiety, stress, and irritability returned, as well as lapses in her medication's efficacy.  The Court cannot "reweigh the evidence or substitute [its] judgment" in place of the ALJ's.  *Whitehead v. Colvin*, 820 F.3d 776, 782 (5th Cir. 2016).  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Id.* at 779.  The ALJ's decision does not lack support from credible evidence or medical findings.  Thus, substantial evidence supports the ALJ's mental RFC decision.

### b. Plaintiff's RFC for light work is supported by substantial evidence.

Plaintiff argues that the record evidence does not support the standing requirements for an RFC of light work.  As stated earlier, "light work" requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."  Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).  As an initial matter, Plaintiff points out that the ALJ rejected, or assigned little weight, to every medical opinion addressing Plaintiff's ability to stand.  However, as discussed above, the lack of support from a medical opinion is not the dispositive issue.  *Wills*, 2023 WL 4015174, at *3; *Young*, 2020 WL 4584388, at *4 ("when an ALJ assigns little weight to every medical [opinion], the ALJ relies on the medical treatment records, rather than on any expert

16

medical opinion, to make his [RFC] findings.") (internal quotations omitted). Instead, the Court looks to see if the ALJ's determination is supported by substantial evidence. In finding Plaintiff maintained the RFC for light work, the ALJ considered Plaintiff's daily activities and weighed the opinions of Dr. Sless, Dr. Bhojani, the state agency medical consultants, and Dr. Acra. Tr. 24–27.

An ALJ may rely on a claimant's daily activities in conjunction with other evidence to formulate the RFC. *Reyes v. Sullivan*, 915 F.2d 151, 154–55 (5th Cir. 1990); *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status."); *Conley-Clinton v. Saul*, 787 F. App'x. 214, 217 (5th Cir. 2019) ("the ALJ properly considered Conley-Clinton's treatment records, activities of daily living, weight, and administrative findings made by the state agency."). Here, the ALJ properly relied on evidence of Plaintiff's daily activities to find Plaintiff had the capacity to stand within the bounds of light work. Those activities included walking up to three miles per day, attending church weekly, shopping for groceries with her husband, and doing daily chores. Tr. 550–51, 1098, 1336. *See Allen v. Kijakazi,* No. 21-30771, 2022 WL 7265517, at *2 (5th Cir. Oct. 12, 2022) (finding Plaintiff's ability to drive a car, shop, prepare simple meals, and attend to personal hygiene consistent with an RFC of lightwork); *See also Owens v. Heckler*, 770 F.2d

1276, 1282 (5th Cir. 1985) (affirming an RFC of lightwork where record showed plaintiff could walk one mile, drive a car, attend church, and go to grocery store).

The ALJ also evaluated several medical opinions. In November 2019, Dr. Sless opined that Plaintiff could sit for eight hours and that she could stand and/or walk for four hours. Tr. 24. The ALJ found this opinion unpersuasive because Dr. Sless rendered it six months prior to Plaintiff's onset date of May 4, 2020. Tr. 25 (citing Tr. 1058). In October 2020, Dr. Bhojani opined that Plaintiff could sit for two-plus hours and could stand for one hour. *Id.* (citing Tr. 950). The ALJ found this portion of Dr. Bhojani's opinion unpersuasive because Dr. Bhojani's own examination of Plaintiff did not support the opinion that she could stand for only one hour and sit for only two. *Id.* For example, Dr. Bhojani's records demonstrate that Plaintiff's clinical abnormalities were limited only to "reduced range of motion, very slow gait, difficulty standing up from the seated position, and inability to squat or bend." *Id.* (citing Tr. 949–50). Furthermore, the ALJ noted Dr. Bhojani's report found Plaintiff demonstrated 5/5 muscle strength in all extremities, showed no signs of muscle atrophy, and did not require an assistive walking device. *Id.* The ALJ also found Plaintiff's daily activities contradicted Bhojani's findings. *Id.* Specifically, the ALJ noted the record evidence demonstrating that Plaintiff was able to perform a wide range of caregiving duties, walk two to three miles per day, and perform daily chores. *Id.* (citing Tr. 1098, 1119, 1133, 1336).

The ALJ next considered the state agency medical consultants' opinions.  Tr. 26.  In December 2020, Dr. Spoor found that Plaintiff could sit for six hours and stand for five hours in an eight-hour workday.  *Id.* (citing Tr. 84).  In February 2021, during reconsideration, Dr. Chang affirmed Dr. Spoor's earlier opinion.  *Id.* (citing Tr. 99).  The ALJ found the state agency medical consultants' opinion as a whole only partially persuasive.  *Id*.  The ALJ noted that Dr. Spoor's findings were "not fully consistent" with Plaintiff's ability to walk without an assistive device and her daily regimen of walking two to three miles per day.  *Id.*  Moreover, the ALJ noted Plaintiff's hip and back pain had improved with physical therapy.  *Id.* (citing Tr. 1300, 1333, 1336).  The ALJ found that, as a whole, the record demonstrated that Plaintiff had the capacity to stand for at least six hours in an eight-hour workday.  *Id*.

Finally, the ALJ considered Dr. Acra's opinion.  *Id*.  In July 2021, Dr. Acra determined that Plaintiff could sit and stand for four hours in an eight-hour workday. *Id.* (citing Tr. 1200).  However, the ALJ found Dr. Acra's opinion internally inconsistent and unpersuasive.  Tr. 27.  Prior to formulating the July 2021 opinion, Dr. Acra had only encountered Plaintiff only once, in May 2021.  *Id.* (citing Tr. 1144).  Moreover, Dr. Acra's treatment observations indicate that Plaintiff's only abnormality was tenderness in the lumbar spine, and that she otherwise showed no signs of acute musculoskeletal deformities.  *Id.* (citing Tr. 1151).  The ALJ found the lack of clinical abnormalities did not support Dr. Acra's opinion regarding

Plaintiff's limitations for standing and walking. *Id*. Additionally, the ALJ found that Plaintiff's conservative treatment routine, couple with her daily activities, did not support Dr. Acra's limitations for standing or walking. *Id*.

The ALJ engaged in a detailed analysis of the medical opinions discussed above. The ALJ relied accurate medical information from various medical providers as well as medical records demonstrating normal findings. Furthermore, the ALJ properly considered Plaintiff's daily activities. In sum, based on all the evidence, Plaintiff's RFC for light work is supported substantial evidence.

### c. The ALJ properly accounted for Plaintiff's manipulative limitations.

The ALJ determined that Plaintiff could perform light work except she can "frequently reach overhead with the bilateral extremities … and she can frequently reach in all other directions with the left upper extremity." Tr. 20. Plaintiff argues that this RFC does not account for any manipulative limitations and is otherwise unsupported by substantial evidence. However, ALJ is not required to incorporate limitations into the RFC that are not supported by the record. *Chambliss*, 269 F.3d at 532 n.1.

In October 2020, x-rays showed severe arthritis and decreased range of motion in Plaintiff's left elbow. Tr. 21 (citing Tr. 960). However, the ALJ noted that as recently as February 2022, Plaintiff exhibited 5/5 strength in her left upper extremity. Tr. 22 (citing Tr. 1233). Furthermore, in May 2022, Plaintiff exhibited normal

muscle tone and no signs of atrophy, although she did continue to demonstrate a reduced range of motion in the left upper extremity. *Id.* (citing Tr. 1256). To support the limitations he found for Plaintiff's left upper extremity, the ALJ determined that Plaintiff undertook a generally conservative treatment routine and demonstrated improvement over the relevant disability period. Tr. 21. With respect to Plaintiff's right upper extremity, the ALJ noted that Plaintiff exhibited no pain in her right arm and showed significant improvement. Tr. 27 (citing Tr. 1027). Treatment notes demonstrate that Plaintiff retained normal range of motion and strength in her right upper extremity. *Id.* (citing Tr. 1232–33). Additionally, the ALJ noted that Plaintiff did not seek regular treatment for her right arm throughout the relevant disability period. Tr. 25.

With respect to the manipulative limitations, the ALJ found Dr. Bhojani's opinion that Plaintiff could handle small objects, handle, finger, and feel, to be persuasive. *Id.* (citing Tr. 950). Further, the record demonstrates that Plaintiff's hands showed no signs of swelling or reduced range of motion. *Id.* A February 2022 orthopedic examination demonstrated that Plaintiff retained 5/5 grip strength in both upper extremities, which constitutes further evidence to support the ALJ's determination that Plaintiff could finger, feel, and handle within the bounds of light work. Tr. 1233. Substantial evidence supports the ALJ's decision not to include additional manipulative limitations in the RFC. Taken as a whole, the entire medical

record, including Dr. Bhojani's and Dr. Sless' records, presents substantial evidence to support the ALJ's determination that Plaintiff did not have additional manipulative limitations that needed to be included in the RFC for light work.  Tr. 24–25.  In sum, the ALJ did not commit legal error in formulating Plaintiff's RFC and the ALJ's RFC is supported by substantial evidence.

### E. Step Five.

At step five, the ALJ determines whether the claimant's RFC, age, education, and work experience allow the claimant to perform other work that exists in the national economy.  20 C.F. R. § 404.1520(a)(4)(v); *Fraga*, 810 F.2d at 1304.  When posing hypothetical questions to a vocational expert to determine whether the claimant can perform work in the national economy, the ALJ must reasonably incorporate all the limitations recognized by the RFC, and the claimant or her representative must be afforded the opportunity to correct any deficiencies in the question.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson*, 309 F.3d at 273.

Based on Plaintiff's age, education, work experience, RFC, and vocational expert testimony, the ALJ determined that there are jobs in significant numbers in the national economy that the Plaintiff could perform.  Tr. 29. Therefore, the ALJ found that Plaintiff had not been under a disability from May 4, 2020, through the date of the decision.  *Id.*  The hypothetical questions posed to the vocational expert

contained all the limitations the ALJ found supported by the record. Tr. 50–53, 71–73. Further, Plaintiff has not met her burden to show that the ALJ's RFC determination is not supported by substantial evidence or is the result of legal error. Thus, the ALJ did not err at step five when she relied on the testimony of the vocational expert to find that Plaintiff is capable of performing jobs that exist in the national economy.

## IV.    Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in Support of Her Social Security Appeal (ECF 12) be DENIED and the Commissioner's decision AFFIRMED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on January 24, 2025, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge